UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARON JOHNSON,            )<br>    *Plaintiff*,            )<br>                         )<br>v.            )<br>                         )<br>STATE OF CONNECTICUT            )<br>DEPARTMENT OF CORRECTION,            )<br>    *Defendant*. | CASE NO. 3:22-cv-112 (KAD)<br><br><br><br><br>MARCH 25, 2024 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 57)**

Kari A. Dooley, United States District Judge:

    Plaintiff Sharon Johnson commenced this employment discrimination action against the State of Connecticut Department of Correction ("DOC") alleging that DOC denied a reclassification of her position, training and promotional opportunities, and her application for the Payroll Officer 1 position on account of her race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Pending before the Court is a motion for summary judgment filed by Defendant, which Plaintiff opposes. For the following reasons, the motion for summary judgement is GRANTED in part and DENIED in part. (ECF No. 57)

**Standard of Review**

    The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is

confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Facts and Procedural History**

As a preliminary matter, the Court addresses Plaintiff's non-compliance with Local Rule 56(a). Local Rule 56(a)2(i) provides in pertinent part:

> A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c). . . . All admissions and denials shall be binding solely for purposes of the motion unless otherwise specified. All denials must meet the requirements of Local Rule 56(a)3. . . .

D. Conn. L. Civ. R. 56(a)2(i). Local Rule 56(a)3 requires that a denial of a movant's material fact be followed by a specific citation to evidence in the record, supporting the denial. D. Conn. L. Civ. R. 56(a)3. "Failure to provide specific citations to evidence in the record as required by . . . Local Rule [56(a)3] may result in the Court deeming admitted certain facts that are supported by the evidence." *Id.* See *Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc.*, 570 F. Supp. 2d 282, 283 n.1 (D. Conn. 2008) (finding factual assertions in Local Rule 56(a)1 Statement to be "deemed admitted because they have not been squarely denied with specific citation to evidence in the record as Local Rule 56(a)(3) requires"); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."). Further, Local Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *S.E.C. v. Glob. Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004).

Here, Plaintiff's Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment does not comply with Local Rule 56(a) in multiple significant respects. To start, Plaintiff did not reproduce the Defendant's Rule 56(a)1 statements before responding, requiring the Court to examine both documents simultaneously to determine which of Defendant's statements were admitted and which were denied. Further, with respect to numerous paragraphs, rather than indicate that Defendants' Rule 56(a)1 Statement of Fact is denied or disputed with a citation to record evidence, she identifies facts as "denied" when in fact there is no actual dispute as to the accuracy of the statement.[1] She then follows this "denied" designation with sometimes lengthy argument as to the merits of her claims.

Indeed, many of Plaintiff's responses are replete with legal argument, conclusory allegations, personal belief and speculation, which is inappropriate. *See* D. Conn. L. Civ. R. 56(a)3; *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)1 Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments). Unfortunately, Plaintiff's approach defeats the purpose of Local Rule 56(a) as it all but precludes the Court from using the competing statements of facts to identify the existence and scope of any actual factual disputes and the record evidence supporting the competing narratives. Therefore, unless otherwise noted, the following facts are either expressly undisputed or deemed admitted by Plaintiff's failure to comply with Local Rule 56(a)3. *See Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party

---

[1] For example, paragraph 6 of Defendant's Rule 56(a)1 states: "Plaintiff testified at her deposition that no one at DOC ever said anything to her about her race." It is a simple enough inquiry to determine whether, in fact, that was Plaintiff's deposition testimony. Notwithstanding, Plaintiff responds: "DENIED. Several employees have mentioned Sharon Johnson's race during the duration she was working with the Department of Correction." Plaintiff had both the ability and obligation to put forth these facts and the evidence relied upon in her statement of "Additional Material Facts." *See* Rule 56(a)2(ii). She failed to include such a statement and instead elected to argue her case in response to Defendant's statement of material facts, which is improper.

4

fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.").

The Court next turns to Plaintiff's untimely disclosures. Specifically, Plaintiff's sur-reply purports to cure her problematic submission of affidavits from people she had not previously disclosed as witnesses in discovery. When Defendant argued that Plaintiff cannot, at summary judgment, offer such witness statements, Plaintiff blithely supplemented her discovery disclosures to include the witnesses for whom she had offered these affidavits. Plaintiff justifies this course of conduct because, she asserts, Cristina Casey and Eric Fraticelli recently informed Plaintiff that they had witnessed the discriminatory treatment she endured at the DOC. Plaintiff also asserts that these witnesses were reluctant to come forward for fear of retaliation. The problem for Plaintiff is that these assertions are advanced without any evidence whatsoever—there is no affidavit from Plaintiff as to when these witnesses advised her that they witnessed any of the events at issue and certainly no evidence from which to infer the witnesses' reluctance to come forward for fear of retaliation.[2]

As indicated, Defendant argues that Plaintiff should be precluded from relying on these affidavits. The Court first observes that "[t]he purpose of [Rule 37(c)] is to prevent the practice of sandbagging an adversary with new evidence." *Canales v. United States*, 2021 WL 1588809, at *2–3 (E.D.N.Y. Apr. 22, 2021), *aff'd*, 2021 WL 5830765 (E.D.N.Y. Dec. 8, 2021). On this record, it is difficult to characterize Plaintiff's submission of these affidavits as anything other than sandbagging. Notwithstanding, the Court looks to the *Softel* factors. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (in assessing preclusion of evidence in the face of discovery violations, courts consider: (1) the party's explanation for the failure to

---

[2] Plaintiff's counsel made this assertion through briefing without citation to any evidentiary basis for the argument advanced. The Court finds this troubling.

comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance). The balancing of these factors is entrusted to the Court's discretion and no one factor is dispositive. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017). Here, Plaintiff's explanation for the failure to comply with the discovery is suspect in light of its timing and as discussed above, without any support in the record evidence. The importance of the affidavits is *de minimis* insofar as they are largely conclusory and do not, as argued, create genuine issues of material fact,[3] and the prejudice to Defendant is significant at this very late stage in the summary judgment briefing. Allowing these witnesses to be identified might require the reopening of discovery, depositions, or additional written discovery, all at great cost. The final factor, the possibility of a continuance, is neutral. Accordingly, the Court shall not consider the affidavits of Casey and Fraticelli.

Turning to the actual facts: Johnson, an African American woman, began employment with DOC in June 2012 as a Payroll Clerk. Def. LRS at 1 ¶ 1; Pl. LRS at 18 ¶ 51. In February 2014, Johnson moved to the DOC Worker's Compensation Unit as a Human Resources Assistant. Def. LRS at 2 ¶ 2.

Johnson submitted application for reclassification to Human Resources Associate at the end of 2017. Pl. LRS at 3 ¶ 13; Def. LRS at 4 ¶ 17.[4] Jeff Miller, DOC Human Resources Director, submitted Johnson's application and others in February 2018. Pl. LRS at 3 ¶ 13; Def. LRS at 4–5

---

[3] The affidavits contain legal conclusions, personal lay opinions, and conclusory accusations. They are decidedly bereft of personal factual observations from which an inference of discriminatory intent might be drawn. As such, even if considered, they would not alter the outcome of the motion for summary judgment.

[4] The parties dispute whether Plaintiff applied for reclassification in October 2017 or December 2017. Because the Court concludes that Plaintiff's claims that pre-date April 2, 2019, are time-barred, it is ultimately immaterial whether she applied in October or December.

¶ 13. Reclassification of a position is based on the review and approval by DAS upon a determination that the employee is performing job duties at the higher position classification. Def. LRS at 3 ¶ 12. DAS rejected the reclassification request because Plaintiff did not meet the education and training requirements for Human Resources Associate. Def. LRS at 4 ¶ 15. Miller resubmitted the reclassification request in July 2018 because Plaintiff passed the Human Resources Associate exam; in August 2018, DAS approved the reclassification request and retroactively promoted Johnson effective July 6, 2018. Def. LRS at 4 ¶ 16.

Plaintiff requested upward mobility training in the form of shadowing a Human Resources Specialist in July 2019. Def. LRS at 5 ¶ 20. Several of Plaintiff's white coworkers received training and were subsequently promoted. For example, Mariola Szlanga and Nayda Concepcion were promoted in 2018 to Human Resources Assistants and allowed to train in 2019; Sylwia Wanat was also promoted to Human Resources Assistant in 2018 and allowed to train in 2020; and Joyce Becker was allowed to train in 2018 and promoted in the same year to Human Resources Associate and promoted again in 2020 through reclassification. Def. LRS at 5 ¶ 21. Szlanga, Concepcion, Becker, and Wanat were not in the Workers' Compensation Unit and performed different duties under different supervisors. Def. LRS at 5 ¶ 22. Plaintiff testified that no one in her unit was afforded training that she was not afforded or provided the opportunity to cross-train or shadow others in the DOC. Def. LRS at 6 ¶ 23.

In October 2019, Plaintiff applied for a Payroll Officer 1 position within DOC's payroll unit. Def. LRS at 11 ¶ 40. The position required five years of experience in complex clerical work in accounting or payroll and two years of payroll preparation as the principal responsibility at the level of Payroll Clerk. Def. LRS at 11 ¶ 41. Although disputed by Plaintiff, Defendant asserts that Steven Plourde, DOC Assistant Chief of Fiscal/Administrative Services, and Miller interpreted the

7

requirement of two years of payroll preparation at the level of Payroll Clerk to mean a formal position within the State of Connecticut as a Payroll Clerk. Def. LRS at 11–12 ¶ 42. Thus, Defendant asserts, Plaintiff was not interviewed for the position because she did not have two years experience as a Payroll Clerk in state service. Def. LRS at 12–13 ¶ 47–48. The position ultimately went to a white female. Def. LRS at 13 ¶ 51; Pl. LRS at 18 ¶ 51.

Because of a statewide centralization of human resources, Johnson became an employee of the State of Connecticut Department of Administrative Services ("DAS") on August 28, 2020. Def. LRS at 2 ¶ 5. Johnson was promoted to Human Resources Specialist in October 2021. Def. LRS at 2 ¶ 5.

On January 27, 2020, Plaintiff dually filed a complaint with the Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). Def. LRS at 3 ¶ 9.

**Discussion**

"Title VII makes it 'an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . [race].'" *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). Discrimination claims under Title VII are analyzed using the *McDonnell Douglas* burden-shifting framework. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The *McDonnell Douglas* test proceeds as follows: (1) plaintiff "bears the minimal burden of setting out a *prima facie* discrimination case," (2) if plaintiff satisfies its burden, plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action," and (3) if the

defendant proffers a legitimate, nondiscriminatory reason, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

*Reclassification*

Defendant seeks summary judgment on Plaintiff's reclassification claim on the basis that it is time-barred. Plaintiff argues that the statute of limitations for her reclassification claim is tolled pursuant to the continuing violation doctrine for every day she remained in her position as a Human Resources Assistant.

It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court. *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). A work-sharing relationship between the Equal Employment Opportunity Commission ("EEOC") and a state discrimination agency such as the CHRO enables the complaint to be cross-listed with the EEOC at the time the CHRO receives it. *See Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000). In states with their own antidiscrimination laws and agencies, like Connecticut, the time period to file the complaint with the EEOC extends from 180 days to 300 days where there is proof that the complaint was first submitted to the state agency. 42 U.S.C. § 2000e-5(e)(1).

"Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be

timely even if they would be untimely standing alone." *Patterson v. Oneida County, NY*, 375 F.3d 206, 220 (2d Cir. 2004). However, the continuing violation doctrine does not apply to "discrete discriminatory acts," which "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). A discrete discriminatory act is a "single completed action" that occurs at a specific time, and typically is actionable on its own. *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 135 (2d Cir. 2003). The Supreme Court has identified "termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete acts, each of which "starts a new clock for filing charges." *Morgan*, 536 U.S. at 113–14.

Plaintiff filed her charge with the Commission on Human Rights and Opportunities, which was dually filed with the EEOC, on January 27, 2020. Ex. 1, ECF No. 57-4, Johnson Dep. 17:12–18:2. The 300th day preceding that charge would be April 2, 2019. The denial for reclassification that forms the basis for this discrimination claim, which is a discrete discriminatory act, *see id.* at 114, was in February 2018. Therefore, her discrimination claim based on the failure to reclassify her is time-barred. Defendant's motion for summary judgment as to this claim is therefore GRANTED.

*Training and Promotional Opportunities*

Defendant next argues that Plaintiff cannot meet her initial burden to establish a *prima facie* case of discrimination with respect to her training and promotional opportunities. Specifically, Defendant contends that Plaintiff did not experience an adverse employment action under circumstances giving rise to an inference of discrimination. Assuming, without deciding, that Plaintiff has indeed suffered an adverse employment action by being denied such training and promotional opportunities, the Court concludes that Plaintiff has failed to raise an inference of

10

discrimination by demonstrating that she was treated less favorably than a similarly situated employee.

A plaintiff may raise an inference of discrimination "by showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination." *Id.* at 43. To be "similarly situated" for the purposes of Title VII, the individuals with whom plaintiff compares himself "must be similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). The test for materiality asks whether Plaintiff and the individuals against whom she compares herself were subjected to the same workplace standards and whether the conduct at issue was of comparable severity. *Graham*, 230 F.3d at 40.

Here, the white coworkers that Plaintiff identifies as comparators who were provided shadowing and other training opportunities and thereafter promoted had different supervisors and worked in different units. Johnson Dep. 38:7–45:17, 56:23–61:5, 66:17–67:8. Plaintiff has not identified any evidence to suggest that the comparators performed similar duties to her. In fact, she concedes that her comparators were afforded training while employed within the HR Integrated Services Department, wherein they performed different job roles and duties than herself. *Id.* at 38:7–41:24. Furthermore, her comparators were afforded training while occupying positions junior to Plaintiff's. *Id.* at 21:15–22, 38:5–25, 42:16–45:17. Accordingly, Plaintiff cannot establish that the failure to afford her training opportunities occurred under circumstances giving rise to an

inference of discriminatory intent as her comparators were not, in fact, sufficiently similarly situated. Defendant's motion for summary judgment as to this claim is therefore GRANTED.

*Payroll Officer 1*

Last, Defendant argues that summary judgment is appropriate on Plaintiff's claim that Defendant discriminated against her when it failed to interview her for the Payroll Officer 1 position. Defendant contends that Plaintiff did not meeting the minimum qualifications for the position and that this reason was a legitimate, nondiscriminatory basis for not interviewing her. Defendant also asserts that Plaintiff has not established a genuine issue of material fact as to either assertion or that Defendant's proffered reason is prextextual. The Court disagrees.

To establish a *prima facie* case based on an alleged discriminatory failure to promote, a plaintiff must allege that (1) she is a member of a protected class; (2) she applied and was qualified for the position; (3) she was rejected for the position; and (4) the rejection of the plaintiff's application occurred under circumstances giving rise to an inference of discrimination. *Lomotey v. Conn. Dept. of Transp.*, 355 F. Appx. 478, 480 (2d Cir. 2009). The fourth element may be "established if the employer fills the position with a person outside the protected class who was similarly or less qualified than the plaintiff." *Yu v. New York City Hous. Dev. Corp.*, 494 F. Appx. 122, 125 n.4 (2d Cir. 2012).

Plaintiff, an African American woman, is a member of a protected class, she was neither interviewed nor selected for the position, and the position went to a white woman. *See Payne v. Conn. Dept. of Transportation*, 267 F. Supp. 2d 207, 210–11 (D. Conn. 2003); *see also Haughton v. Cromwell*, No. 3:19-cv-359 (MPS), 2021 WL 4248858, at *5 (D. Conn. Sept. 17, 2021) ("Promotion of a similarly situated employee not in the plaintiff's protected group is sufficient to support an inference of discrimination."). The parties dispute whether Plaintiff met the minimum

qualifications for the position and whether that proffered legitimate, non-discriminatory reason for Defendant's failure to interview her for the Payroll Officer 1 position was pretextual.

On the one hand, Defendant posits that the requisite experience of two years of payroll preparation at the level of "Payroll Clerk" required two years of experience as a Payroll Clerk *in state service*. At the time of her application, Plaintiff had only one year and eight months as a Payroll Clerk with DOC and the remainder of her payroll experience was in the private sector.

On the other hand, Plaintiff argues that the job listing is ambiguous at best, does not reflect that two years of experience in payroll preparation must be in state service, and that there is additional evidence which supports the inference that this false after-the-fact explanation for failing to interview her is a pretext for discrimination. The Court agrees that Plaintiff has shown a genuine dispute of material fact insofar as she challenges, with admissible evidence, the credibility of Defendant's rationale. *Kahn v. Fairfield Univ.*, 357 F. Supp. 2d 496, 504 (D. Conn. 2005).

Email communications suggest that at the time of the application, Plourde believed Plaintiff *was* qualified for the position. Notwithstanding, he was apparently instructed not to inform her that she was so qualified as "[c]andidates who meet the job specification and preferred qualifications should always be granted the interview." Ex. 15, ECF No. 62-16 at 1–2.[5] Thereafter, Plourde specified to Plaintiff that the two years of payroll experience had to be with the state. *See* ECF No.

---

[5] Defendant objects to the inclusion and consideration of these emails pursuant to Fed. R. Evid. 901 and 902 because they are inadmissible unauthenticated documents. Evidence submitted at the summary judgment stage must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]he bar for authentication of evidence is not particularly high." *United States v. Al–Moayad*, 545 F.3d 139, 172 (2d Cir.2008) (internal quotation marks and citation omitted). There is no claim that these emails were not produced in discovery by Defendant, that they are anything other than what they purport to be, or are otherwise false or fabricated emails. *See Schaghticoke Tribal Nation v. Kempthorne*, 587 F.Supp.2d 389, 397 (D. Conn. 2008) ("emails . . . properly authenticated to the extent that they were produced . . . by [party challenging authenticity] itself during discovery"), *aff'd*, 587 F.3d 132 (2d Cir. 2009). "T]he court has the discretion to consider unauthenticated or otherwise objectionable evidence where it is apparent that the party may be able to authenticate and establish the admissibility of those documents at trial." *Delgado v. City of Stamford*, No. 3:11-cv-01735 (VAB), 2015 WL 6675534, at *5 n.3 (D. Conn. Nov. 2, 2015). Accordingly, the Court will consider the exhibits, although the Court shares Defendant's frustration with Plaintiff's failure to adhere to the Local Rules in briefing the motion for summary judgment.

62-17 at 1–2. However, the job posting does not specify whether the payroll experience had to be with the state; it only requires that two years of the general experience in payroll "must have had payroll preparation as the principal responsibility at the level of Payroll Clerk." *Id.*

Although the Court finds Plaintiff's evidence as to discriminatory intent is not particularly compelling, the Court concludes that Plaintiff has raised a genuine dispute of material fact as to whether she was refused an interview for pretextual reasons because "at the level of Payroll Clerk" is susceptible to several reasonable interpretations, *i.e.*, whether two years of non-state service doing payroll work "at the level of Payroll Clerk" satisfies the minimum qualifications for the position or whether a formal position within the State of Connecticut as a Payroll Clerk was necessary. "Evidence that an employer's reason is false, combined with the evidence presented to establish a *prima facie* case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination." *Payne v. Conn. Dept. of Transportation*, 267 F. Supp. 2d 207, 212 (D. Conn. 2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)). Indeed, "[i]t is not the province of the court itself to decide what inferences should be drawn . . . if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000). Defendant's motion for summary judgment as to Plaintiff's failure to interview or promote claim is therefore DENIED.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. (ECF No. 57)

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of March 2024.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE